**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed November 18, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00976-CV

---

## IN THE INTEREST OF H.D.C AND R.C.C., CHILDREN

---

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-36300**

---

## O P I N I O N

In this appeal, a mother challenges the trial court's decision to modify the parent-child relationship, granting the father the right to determine the children's primary residence, and awarding him child support. In addition to determining whether the trial court abused its discretion in making those decisions, we consider whether the trial court abused its discretion in imposing a restriction that the children's mother be "off work" and "present" to exercise her extended summer possession. We reverse and remand the portion of the trial court's judgment containing this restriction and affirm the remainder.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Misty[1] ("Mother") and Robert ("Father") are parents of two children, a teenage daughter, H.D.C. and a grade-school age son, R.C.C. Mother and Father divorced in 2008 and at that time signed an agreed order that appointed both as joint managing conservators of their son and daughter. The order gave Mother the exclusive right to designate the children's primary residence. Father had a standard possession order and was ordered to pay child support. In February 2011, Father filed a petition to modify the parent-child relationship. In his petition, he requested the exclusive right to designate the children's primary residence. Father also requested two separate temporary modification orders granting him the right to designate the primary residence of each child. The trial court granted Father's motion for temporary orders with respect to the daughter in March 2011 and with respect to the son in June 2011. The trial court issued temporary orders in February 2012, requiring Mother to pay $100 per month in total child support for both children.

Seven months later, at the trial on Father's petition to modify the parent-child relationship, the daughter's therapist testified regarding the teen's self-esteem issues, academic issues, and destructive social behavior. The therapist opined that the daughter had improved substantially after the court granted Father's request for temporary orders. The therapist saw the son for a brief period of time and testified that he had academic issues which "cleared up" once he began residing with Father.

Mother testified that many of her daughter's problematic behaviors occurred while the daughter was with Father and denied the occurrence of many specific behaviors at Mother's home. Mother's ex-boyfriend, who lived with Mother for a

---

[1] To protect the privacy of the minors involved in this case, we identify the parents by their first names.

2

period of time, contradicted many of Mother's denials, including a denial that the teenage daughter consumed 12 Benadryl pills at once while she was in Mother's possession.  Father testified that he began noticing problems with his daughter in January 2009, and sought to establish her primary residence with him after, in his opinion, Mother failed to take appropriate action.  Father admitted that the daughter engaged in several problematic behaviors while his daughter was living with him and that he disciplined her in response.  He stated that the teenager's behavior had improved.  Father also testified that his son experienced some academic issues and that those difficulties also had improved.

The trial court granted Father's petition and ordered Mother to pay $500 per month in child support.  Mother filed a motion for a new trial, which the trial court overruled.  Mother now challenges the trial court's judgment raising several issues in this appeal.

## II. STANDARD OF REVIEW

In determining issues of conservatorship and possession and access, the primary consideration is always the best interests of the child.  *See* Fam. Code Ann. § 153.002 (West 2014); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002).  We review a trial court's decision to modify an order regarding conservatorship or the terms of possession of and access to a child under an abuse-of-discretion standard. *See Baltzer v. Medina*, 240 S.W.3d 469, 474–75 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles.  *See Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion.  *Id.*  There is no abuse of discretion as long as some evidence of a substantive and probative character exists to support the trial court's exercise

3

of its discretion. *Id.*

### III. ISSUES AND ANALYSIS

### A. Propriety of Restriction on Parental Possession

Mother asserts in her first and second issues that the trial court abused its discretion in imposing the requirement that she be "off work" and "present" to exercise her extended summer possession of the children. Specifically, Mother argues that this restriction is ambiguous and broader than necessary to serve the children's best interests.

### 1. Lack of Ambiguity

An appellate court reviews de novo the question of whether a possession order is ambiguous. *See McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 131 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When a court places restrictions or conditions on a parent's possession rights, the court must define those terms specifically. *In re A.L.E.*, 279 S.W.3d 424, 432 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The judgment must state in clear and unambiguous language, what is required for the parent to comply, and the terms must be specific enough to permit the court to enforce the judgment by contempt. *Id.*

The trial court's requirement that Mother be "off work" and "present" to exercise her extended summer possession of the children is clear and unambiguous. *See A.L.E.*, 279 S.W.3d at 432. To comply with the restriction, Mother must (1) not be working and (2) Mother must be in the presence of the children. To the extent Mother argues in her first and second issues that the restriction is vague and ambiguous, those issues are overruled.

### 2. Restrictions on Mother's Possession

A child's best interest is always the primary consideration of the court in determining issues of possession and access. Tex. Fam. Code Ann. § 153.002

(West 2014).  The trial court has broad discretion in fashioning restrictions on a parent's possession and access that are in the best interest of the child.  *In re S.A.H.*, 420 S.W.3d 911, 928 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Flowers v. Flowers*, 407 S.W.3d 452, 461 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  The trial court abuses its discretion, however, if it imposes restrictions that exceed those required to protect the best interests of the child.  Tex. Fam. Code Ann. § 153.193 (West 2014); *Flowers*, 407 S.W.3d at 463; *Moreno v. Perez*, 363 S.W.3d 725, 739 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding restriction on overnight presence of unrelated adult companions was excessive where record supported restriction on overnight presence of unrelated adult *male* companions). The trial court does not abuse its discretion if the record contains evidence to support a finding that a restriction is in the child's best interests.  *In re S.A.H.*, 420 S.W.3d at 928.

In its findings of fact, the trial court found that the son and daughter had been left unsupervised many times while Mother was at work.  The record contains evidence that the daughter engaged in harmful, self-destructive behavior on multiple occasions while unsupervised at Mother's home.  This evidence supported the trial court's determination that the children needed to be supervised while in Mother's care, and the trial court did not abuse its discretion in requiring supervision.

At trial, Father requested that the trial court require Mother to be home to supervise the daughter and he requested that the trial court not allow Mother to allow her mother or brother to supervise the daughter.  The record contains evidence that Mother's brother has a marijuana conviction and has abused prescription drugs for which he did not have a prescription.  The record also contains evidence that Mother's mother lost her daycare license because of the

brother's activities, which suggests that Mother's mother permitted the brother's inappropriate activities at the daycare where children were present. This evidence could support a determination that allowing Mother's mother and Mother's brother to supervise H.D.C. and R.C.C. was not in the children's best interests. Accordingly, it was not an abuse of discretion to restrict who could supervise the children while they were in Mother's possession. *See In re A.L.E.*, 279 S.W.3d 424, 429 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting problems in granting possession to Mother with history of substance abuse).

Although the trial court did not abuse its discretion in finding that the best interests of the children require them to be supervised and had ample evidence to support a restriction on who could supervise the children, we conclude the requirement that Mother herself be "off work" and "present" during her month of summer possession is unduly burdensome and unnecessarily restrictive. The restriction is not necessary to ensure that the children are under adult supervision at all times. A lesser restriction requiring Mother to arrange for an adult, other than Mother's mother or Mother's brother, to supervise the children in her absence would satisfy the children's need for adult supervision when Mother is not present and alleviate Mother from the potential financial burden on Mother associated with being "off work" for an extended period of time in order to personally supervise the children. The restriction requiring Mother to be "off work" and "present" to exercise her summer period of possession exceeds that which is required to protect the best interests of the children because a less burdensome restriction can serve the trial court's reasonable requirement that the children be properly supervised at all times. *See Flowers*, 407 S.W.3d at 463 (holding that the trial court abused its discretion in enjoining father from leaving children in the care of any person not related to the children by blood or adoption).

6

The trial court abused its discretion in imposing this restriction. *See id.* Accordingly, we sustain Mother's first and second issues to the extent those issues address the restriction's breadth. We reverse that portion of the order containing this restriction and remand to the trial court to fashion an appropriate restriction. *See id.; In re S.A.H.,* 420 S.W.3d at 928; *Moreno v. Perez,* 363 S.W.3d at 739.

## B. Alleged Failure to Make Requisite Findings of Fact

In her third issue, Mother argues that the trial court erred in signing the judgment modifying the parent-child relationship because the judgment was not supported by the court's findings of fact and conclusions of law. In particular, Mother argues that the trial court erred by failing to find that the modification is in the best interests of the children or that there has been a substantial and material change in circumstances since the date of the order the court modified. Mother argues that when findings of fact are filed and no element of a recovery has been included in a finding, the judgment may not be supported on presumed findings and should be reversed.

The trial court did not explicitly state in its findings of fact and conclusions of law that there was a substantial and material change in circumstances since the date of the order modified or that the modification was in the children's best interests. The trial court, however, made a finding that it was in the best interests of the children that Father have the right to designate the children's primary residence. Although the trial court's findings of fact and conclusions of law did not include a finding regarding a material and substantial change in circumstances or that modification of the original order was in the children's best interests, the trial court included these findings in its judgment modifying the parent-child relationship. These findings have probative value as long as they do not conflict with those in a separate document. *See Baltzer*, 240 S.W.3d at 474. In its final

7

judgment, signed on July 23, 2013, the trial court found that "the material allegations in the petition to modify are true and that the requested modification is in the best interest of the children." The material allegations in Father's petition included the allegation that the circumstances of the children had materially and substantially changed since the date of the order to be modified and that the requested modification is in the children's best interests. The trial court's separate findings of fact and conclusions of law support its finding that the material allegations in the petition are true. Because the findings in the judgment do not conflict with the separate findings of fact and conclusions of law, they have probative value. *See id.* The trial court made sufficient findings to support its judgment. *See id.* Mother's third issue is overruled.

## C. Determination of Changed Circumstances Supporting Modification

In her fourth issue, Mother asserts that the trial court abused its discretion in granting the modification because there was no evidence of a material and substantial change in circumstances. Specifically, Mother argues that there was no evidence of the circumstances at the time of the order sought to be modified. A trial court may modify the provisions of the divorce decree that provide the terms and conditions of conservatorship or that provide for the possession of or access to a child if modification would be in the best interest of the child and the circumstances of the child, conservator, or other party affected by the order have materially and substantially changed since the rendition date of the divorce decree. *See* Tex. Fam. Code Ann. § 156.101(a)(1) (West 2014); *Flowers*, 407 S.W.3d at 456. In deciding whether a material and substantial change of circumstances has occurred, a trial court is not confined to rigid or definite guidelines. *In re A.L.E.*, 279 S.W.3d at 428–29.

The record reveals that the original decree was signed in 2008. According to

8

Father, the first time he noticed problems with his teenage daughter was in 2009. At that point, he observed hygiene issues. Months later, Father learned that his daughter had posted inappropriate photos of herself on her social media websites. The next year, he discovered that she had begun cutting her arms. The record contains evidence that he discussed the disturbing practice with Mother and she did not think it needed to be addressed until Child Protective Services recommended therapy for the daughter.

The record also reveals that both the son and daughter were struggling academically. Mother's response to the children's academic struggles was to complete their homework for them. The children were truant from school while in Mother's care. Mother was issued an arrest warrant based on their truancy. Nothing in Mother's testimony suggested that these problems were occurring at the time the original divorce decree was signed or contradicted Father's assertion that he began noticing problems in 2009. Although no party testified directly about the circumstances at the time of the original decree, it is apparent from the record evidence that the children began struggling after the decree and that a modification of the original order was in the children's best interests. *See id.* The trial court did not abuse its discretion in determining that a material and substantial change in circumstances had occurred warranting modification of the decree. *See id.* Mother's fourth issue is overruled.

### D. Father's Right to Establish the Children's Primary Residence

In her fifth issue, Mother asserts that the trial court abused its discretion by granting Father the exclusive right to determine the children's residence. Specifically, she argues that her daughter displayed the same problems under Father's care as she exhibited under Mother's care and, therefore, those problems do not justify granting Father the right to determine the children's primary

9

residence. The best interest of the child is of paramount importance in making any custody determination. *See* Tex. Fam. Code Ann. § 153.002 (West 2014); *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000). A court may use the following non-exhaustive list of factors to determine the children's best interests: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by the individuals seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The evidence at trial focused mainly on the parental abilities of the individuals seeking custody as those abilities related to the emotional and physical needs of the children and emotional and physical dangers to the children. On appeal, Mother recites a litany of specific complaints regarding the teenage daughter's problematic behavior at Father's residence, Father's punishment methods, and Father's failure to pick up the daughter from school on a particularly hot day.

While the record revealed that the daughter engaged in some self-destructive behavior while in Father's care, the evidence showed that she also had made significant improvements. Her therapist testified that she noticed "dramatic" changes in the daughter after Father was awarded temporary custody and that granting him custody was, "without a doubt," better for the daughter. According to the therapist, the daughter is doing better in school, her self-esteem has improved, she is trying to pick more appropriate friends, and has become a voracious reader.

10

The therapist attributed the daughter's successes to Father's willingness to set appropriate boundaries. The therapist specifically approved of Father's method of discipline. The therapist also testified that she saw the son for a few months because he had been performing poorly in school. The therapist reported that at the time the son was disorganized and had received bad grades, but the issues were resolved and he no longer needed therapy after some time with Father.

Evidence in the record also suggested that Mother, at times, had undermined Father's attempts to help the daughter. The record contains evidence that after the daughter had posted inappropriate photographs on social media, Mother had allowed the teenager access to social media and found it humorous that the daughter electronically blocked Father from accessing new accounts she had created while in Mother's care. After the daughter had used her telephone to send inappropriate photographs of herself to several males, and Father had suspended the daughter's telephone privileges and begun monitoring her phone, Mother provided the daughter with an alternate SIM card for the daughter's phone, ostensibly to assist the daughter in avoiding Father's monitoring. The evidence shows that Mother failed to supervise the daughter on many occasions in spite of the teenager's inappropriate, disturbing, and dangerous behavior. Mother also provided the daughter with a needle so that the teenager could pierce her own nose. Based on the evidence presented at trial, including the therapist's opinion that the children residing with Father was in the children's best interests, the trial court did not abuse its discretion in granting Father the exclusive right to determine the children's permanent residence. *See In re J.W.H.*, No. 14-09-00143-CV, 2010 WL 1541679, at *7 (Tex. App.—Houston [14th Dist.] Apr. 20, 2010, no pet.) (mem. op.). Mother's fifth issue is overruled.

### E. Determination of Child Support

In her seventh issue, Mother asserts that the trial court abused its discretion in determining the amount of child support she owed. In particular, Mother argues that because insufficient evidence supported the trial court's award, the trial court was required to presume she worked 40 hours per week at minimum wage in setting her support obligation. Mother testified that she earned $2,182 per month at her job, but she did not specify whether the money was gross resources or net resources. The trial court made a finding that Mother has net monthly resources of $2,182, but Mother states it is her gross income. At trial, Mother was asked, "How much do you make [at your job]?" She responded, "2,182 a month."

Reviewing courts employ a two-prong test to determine whether the trial court abused its discretion in determining the amount of a child-support award. *Evans v. Evans*, 14 S.W.3d 343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Appellate courts first determine whether the trial court had sufficient information upon which to exercise its discretion. *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Second, reviewing courts must determine whether the trial court abused its discretion by causing the child-support order to be manifestly unjust or unfair. *Id.* A trial court does not abuse its discretion when its decision is based on conflicting evidence or where some evidence of a probative and substantive character exists to support the child-support order. *Id.* We view the evidence in the light most favorable to the trial court's decision and indulge every reasonable presumption in favor of the trial court's judgment. *Id.*

Mother's testimony that she made $2,182 per month was some evidence of a probative and substantive character to support the trial court's

12

finding that she had $2,182 per month in net resources. *See id.* (holding that wife's testimony that husband made $150,000 was some evidence he had at least $6,000 in net resources per month); *see also Lozano v. Lozano*, No. 13-08-00536-CV, 2009 WL 4882816, at *8–9 (Tex. App.—Corpus Christi Dec. 17, 2009, no pet.) (mem. op.) (holding that trial court did not abuse discretion in determining child support where obligor had opportunities to correct obligee's testimony regarding income). We conclude the trial court did not abuse its discretion in calculating child support based on a finding that the money Mother made each month was her take-home pay, or net resources. *See Newberry*, 146 S.W.3d at 235. We overrule Mother's seventh issue.

### F. Failure to Make Findings of Fact

In her sixth issue, Mother asserts that the trial court erred in failing to make findings of fact in support of the child-support award. Mother argues:

> Under Texas Family Code section 154.130(b), the trial court was required to make all of the following specific findings: the net resources of obligor, the net resources of obligee, the percentage applied to the obligor's net resources for child support, and the specific reasons that the amount of child support per month ordered varies from the amount computed by applying the percentage guidelines under 154.129 of the Texas Family Code, which are the multiple adjusted guidelines applicable here. A trial court's refusal to abide by the Family Code's child support provisions has been held to be reversible error.[2] *Tenery v. Tenery*, 932 S.W.2d 29 (Tex. 1996). The findings made by the trial court, both separately and in the order, are insufficient to comply with the law and the judgment should be

---

[2] In *Tenery v. Tenery*, the Supreme Court of Texas held that a trial court's refusal to make findings of fact and conclusions of law was harmful error because "the trial court's refusal to abide by the Family Code's child-support provisions prevented [appellant] from effectively contesting the trial court's deviation from the guidelines in section 154.125." *See* 932 S.W.2d 29, 30 (Tex. 1996).

reversed as to the child support. . . .

Because the trial court's failure to make these findings upon proper request constitutes reversible error . . . the trial court's judgment should be reversed.

Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *Tenery*, 932 S.W.2d at 30; *Watts v. Oliver*, 396 S.W.3d 124, 131 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In this case, the trial court signed amended findings of fact and conclusions of law finding that Mother's net resources are $2,182 per month, Father's net resources are $3,074.43 per month, and the percentage applied to the first $7,500 of Mother's income is 22.5%. The trial court found that the amount of support ordered is not within the guidelines, but did not provide a reason for the deviation.[3]

The trial court's failure to provide a reason for deviating from the guidelines has not harmed Mother because it has not prevented her from presenting her arguments to the appellate court. Mother has not argued to the court that the child-support award is too high or that the trial court abused its discretion by deviating from the guidelines. Aside from arguing that the trial court failed to make findings of fact and conclusions of law to support the deviation, Mother argues only that the child-support award amounts to an abuse of discretion because there is insufficient evidence to support the trial court's determination that her net resources were

---

[3] Even if Mother had argued that the trial court abused its discretion in ordering support that exceeded the guidelines, the difference between the support ordered and the guidelines is de minimus. *See Glash v. Glash*, No. 14-05-00846-CV, 2006 WL 2862217, at *2 (Tex. App.—Houston [14th Dist.] Oct. 10, 2006, no pet.) (holding *de minimis* difference in ordered support and guideline within trial court's discretion) (mem. op.). The trial court determined Mother's net resources are $2,182. Under Family Code section 154.129, the multiple family adjusted child support guidelines the Mother agrees are appropriate, Mother is obligated to pay 22.5% of the first $7,500 of her net resources. *See* Fam. Code Ann. § 154.129 (West 2014). This is the percentage the trial court determined was in the children's best interests in its findings of fact and conclusions of law. But, 22.5% of $2,182 is $490.95 per month and Mother was ordered to pay $500 per month, a difference of only 1.81% per month.

$2,182 per month. We already have reviewed that determination and rejected Mother's argument. Mother has not identified any issue that she was unable to brief as a result of the trial court's failure to make a finding of fact regarding its deviation from the child-support guidelines. *See Guillory v. Boykins*, 442 S.W.3d 682,—, —S.W.3d—, 2014 WL 3842913, at \*11 (Tex. App.—Houston [1st Dist.] Aug. 5, 2014, no pet. h.). Accordingly, the trial court's failure to make a finding of fact stating the reasons for deviating from the child-support guidelines is harmless. *See id.* Mother's sixth issue is overruled.

## IV. CONCLUSION

The trial court did not abuse its discretion in determining that a material and substantial change in circumstances had occurred or that modification of the original decree to award Father the right to designate the children's primary residence was in the children's best interests; the trial court made sufficient fact-findings to support these rulings. The trial court did not abuse its discretion in determining Mother's net resources. Any failure by the trial court to state its reason for its deviation from the child-support guidelines is harmless error. The evidence, however, is insufficient to support a restriction requiring Mother to be "off work" and "present" during her extended thirty-day summer possession; we therefore reverse this part of the trial court's judgment and remand it to the trial court to bring the restriction into conformity with the evidence. In all other respects, the trial court's judgment is affirmed.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.

16