# NO. 12-21-00227-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF G.S.,* | § | *APPEAL FROM THE 321ST* |
| *A CHILD* | § | *JUDICIAL DISTRICT COURT* |
| | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellants S.F. and J.S. appeal the termination of their parental rights to their minor child, G.S. In three issues, they challenge the legal and factual sufficiency of the evidence supporting the trial court's finding that termination is in G.S.'s best interest and argue that the trial court improperly modified the parties' mediated settlement agreement (MSA) by setting a deadline for Appellants to complete the required services and tasks. We affirm the trial court's judgment.

## BACKGROUND

S.F. is G.S.'s mother, and J.S. is G.S.'s father. On October 30, 2018, the Department of Family and Protective Services filed an original petition for protection of G.S., for conservatorship, and for termination of Appellants' parental rights. The trial court appointed the Department temporary managing conservator of G.S. and allowed Appellants limited access to and possession of G.S. The parties attended mediation and filed a MSA, which the trial court made an order of the court. The trial court subsequently found that Appellants materially breached the MSA and proceeded to a final hearing on the Department's petition. After a trial on the merits, the trial court found that the Department established, by clear and convincing evidence, that (1) both S.F. and J.S. engaged in the acts or omissions necessary to support termination of their parental rights under Subsection (O) of Texas Family Code Section 161.001(b)(1) and (2) termination of Appellants' parental rights is in G.S.'s best interest. Based upon these findings, the trial court signed an order terminating the parental rights of both J.S. and S.F. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights involves fundamental constitutional rights. ***Vela v. Marywood***, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); ***In re J.J.***, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action permanently sunders the bonds between parent and child, the proceedings must be strictly scrutinized. ***Wiley v. Spratlan***, 543 S.W.2d 349, 352 (Tex. 1976); ***In re Shaw***, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). "[W]e must exercise the utmost care in reviewing the termination of parental rights to be certain that the child's interests are best served and that the parent's rights are acknowledged and protected." ***Vela***, 17 S.W.3d at 759.

Section 161.001(b) of the Texas Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2021). The movant must show that (1) the parent committed one or more predicate acts or omissions, and (2) termination is in the child's best interest. *See id*. § 161.001(b)(1), (2); *see also* ***In re J.M.T.***, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; ***Wiley***, 543 S.W.2d at 351; ***In re J.M.T.***, 39 S.W.3d at 237.

The "clear and convincing" evidentiary standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; ***In re J.J.***, 911 S.W.2d at 439. "Clear and convincing evidence" is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The party seeking termination of parental rights bears the burden of proof. ***In re J.M.T.***, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When presented with a challenge to both the legal and factual sufficiency of the evidence, an appellate court must first review the legal sufficiency of the evidence. ***Glover v. Tex. Gen. Indem. Co.***, 619 S.W.2d 400, 401 (Tex. 1981); ***In re M.D.S.***, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). When reviewing the legal sufficiency of the evidence, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact

could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

When reviewing the factual sufficiency of the evidence, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing, and we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id*. If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

## BEST INTEREST OF THE CHILD

In issue one, Appellants challenge the legal sufficiency of the evidence that termination of their parental rights is in G.S.'s best interest, and in issue two, Appellants challenge the factual sufficiency of the evidence that termination of their parental rights is in G.S.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We address issues one and two together.

### The Evidence

On September 2, 2021, the trial court held a hearing on both parents' alleged material breach of their service plans. Department caseworker Vivian Garcia testified that the MSA required S.F. and J.S. to submit to drug tests, and she explained that both S.F. and J.S. tested positive at their first drug tests after mediation, and neither parent had enrolled in an inpatient drug treatment facility despite the trial court having ordered them to do so by July 24, 2021. Garcia explained that G.S. was placed in the Department's care in 2018 due to concerns about her parents' drug use and domestic violence. According to Garcia, the MSA also required S.F. and J.S. to sign

3

releases to enable the Department to follow up on their drug treatment, but Appellants had not done so. Garcia explained that G.S. had been under the Department's care since 2018, when G.S. was a few months old, and G.S. was four years old at the time of the hearing. Garcia opined that Appellants' failure to attend inpatient drug treatment constituted a material breach.

CASA volunteer Andrea Bates testified that G.S. is doing very well in her current placement, and she recommended that G.S. remain there. J.S. testified that he had not entered an inpatient drug treatment facility since he tested positive for methamphetamine on March 18, 2021. According to J.S., he last used methamphetamine four months before the hearing. When asked why he had not returned the requested releases to his caseworker, J.S. explained that he signed a release at the Department's office, and he was unaware of any other requested release. J.S. explained that it was difficult for him to find an inpatient treatment facility because of his status as a registered sex offender. J.S. testified that on two occasions, he was unable to drug test when requested to do so. The trial judge stated, "I am going to find that the parents have materially breached the agreement by failing to get into inpatient [treatment], by failing to test, failing to provide AA . . . sign-in sheets . . . to demonstrate that they were attempting to obtain sobriety and get into a sustainable recovery[.]" The trial judge noted that G.S. had been in foster care for three years, and he stated, "we've got to do something to provide her permanency."

The case proceeded to a final hearing on the Department's request for involuntary termination. At the final hearing, Garcia testified that the Department found abuse and neglect of G.S., which resulted in G.S. coming into care in 2018. Garcia explained that the trial court's final order in December 2019 allowed Appellants supervised visitation with G.S. and required that Appellants complete required services, provide a negative hair follicle sample, and enter a substance abuse treatment facility. Garcia testified that Appellants did not participate in an inpatient drug program since the trial court entered its December 2019 order. Garcia also explained that because both S.F. and J.S. tested positive the first time they were tested after the MSA, they were required to go to inpatient drug treatment, and she testified that the trial judge imposed a deadline of July 24, 2021. Garcia agreed that the MSA did not contain a deadline for completion of drug treatment. Garcia testified that J.S. did not inform her that he was having difficulty finding an inpatient treatment program until July 13, 2021.

Garcia asked Appellants to drug test six times since March 4, 2021, but they were only tested once. Garcia testified that the trial court ordered Appellants to submit to drug testing, but

Appellants did not do so. Once J.S. made Garcia aware that he was having difficulty being admitted into treatment programs due to his registered sex offender status, Garcia provided him with a list of rehabilitation facilities and referred him to East Texas Council on Alcohol and Drug Abuse (ETCADA) so that ETCADA could help him find resources. Garcia testified that S.F. had been admitted to an inpatient drug treatment program that was scheduled to begin the day after the final hearing. According to Garcia, both the trial court's temporary order and final order required Appellants to complete drug treatment, attend parenting classes, attend ninety support group meetings within ninety days ("90 in 90"), and have a negative hair follicle test, but Appellants did not meet these requirements. Appellants did not provide Garcia with sign-in sheets for their "90 in 90," and although Appellants began parenting classes, they did not complete the classes. According to Garcia, G.S. has been in her current foster home for over a year and a half. Garcia explained that G.S. is "doing really well" in her placement, and G.S.'s foster parents are amenable to adoption. Garcia testified that Appellants attended two supervised visits with G.S.

Bates testified that G.S. is in "a great placement" with foster parents who are very involved. G.S. has siblings in her foster placement and is "very well adjusted there." When asked her opinion regarding whether Appellants' parental rights should be terminated, Bates explained, "[t]he parents have had plenty of opportunity to do what the Court has asked of them. It has not been completed[.]" Bates opined that G.S.'s current placement "is a very good home for her to have permanency."

J.S. explained that he had trouble finding an inpatient drug treatment facility that would accept him because of his background, and although he eventually found a facility that would accept him, his admission was postponed. J.S. testified that he did "90 in 90" and completed half of his parenting classes. J.S. admitted that he tested positive on his drug test of March 4, 2021, and testified that he did not take the drug tests Garcia requested. J.S. opined that it is in G.S.'s best interest to be with him because "she deserves to be with her parents" and "her real brothers and sisters."

S.F. testified that she completed "90 in 90" and still attends support groups. When asked about inpatient drug treatment, S.F. explained that she contacted three inpatient programs, but she "just now got the intake date." S.F. was scheduled to begin inpatient treatment the morning after the final hearing, and she explained that she plans to complete her other services and obtain the return of G.S. after treatment. During cross-examination, S.F. explained that although she

completed "90 in 90," she had not provided documentation of same to Garcia. S.F. acknowledged that she tested positive for drugs shortly after the parties signed the MSA. According to S.F., she contracted Covid-19 after caring for her father when he had Covid-19, so she had to quarantine, and S.F. explained that J.S. contracted Covid-19 around the same time.

**Applicable Law**

In determining the best interest of the child, we consider a non-exhaustive list of factors, including: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The Texas Family Code also provides a list of factors that we will consider in conjunction with the *Holley* factors. TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These statutory factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id*.

No particular ***Holley*** factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. ***In re A.P.***, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The evidence need not prove all the statutory or ***Holley*** factors to show that termination of parental rights is in a child's best interest. *See **Holley***, 544 S.W.2d at 372; ***In re J.I.T.P.***, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. ***In re D.M.***, 58 S.W.3d 802, 814 (Tex. App.—Fort Worth 2001, no pet.). Although undisputed evidence of one factor may be sufficient to support a finding that termination is in the child's best interest, the presence of scant evidence relevant to each factor will not support such a finding. ***In re M.R.J.M.***, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). Evidence supporting termination of parental rights is also probative in determining whether termination is in the child's best interest. *See **In re C.H.***, 89 S.W.3d 17, 28-29 (Tex. 2002). In conducting a best-interest analysis, "a court may consider not only direct evidence but also may consider circumstantial evidence, subjective factors, and the totality of the evidence." ***In re J.M.T.***, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). "Parental drug abuse reflects poor judgment and may be a factor to consider in determining a child's best interest." *Id*. Moreover, evidence of illegal drug use supports an inference that a parent is at risk for continuing drug use, which is relevant to the stability of the home, as well as to the child's emotional and physical needs now and in the future and the danger in which the child could be placed now and in the future. *Id*. Evidence of failure to complete all of the tasks and services required by a service plan also supports a trial court's finding that termination is in the child's best interest. *Id*. at 269-70. We will apply the statutory and ***Holley*** factors below.

**Analysis**

As discussed above, G.S. was four years old at the time of trial, and she had been in the Department's care since she was approximately one year old. The evidence indicated that both S.F. and J.S. tested positive for illegal drugs, missed requested drug tests, failed to complete parenting classes, and did not enter inpatient drug treatment at any time from the filing of the case in 2018 to the final hearing in 2021. The trial court also heard evidence that S.F. and J.S. only visited G.S. twice during the pendency of the case. In addition, the trial court heard evidence that G.S. is doing well with her foster parents, and they are amenable to adopting her. Appellants' drug abuse reflects poor judgment, and the trial court could have considered that as a factor in

7

determining G.S.'s best interest. *See id*. Moreover, the undisputed evidence of Appellants' illegal drug use supports an inference that they are at risk for continuing drug use, which is relevant to the stability of the home, as well as to G.S.'s emotional and physical needs now and in the future and the danger in which the child could be placed now and in the future. *See id*. Evidence of Appellants' failure to complete all of the tasks and services required by the service plan contained in the MSA also supports the trial court's finding that termination is in G.S.'s best interest. *See id*.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2019). Viewing all the evidence relating to the statutory and *Holley* factors in the light most favorable to the trial court's finding, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of Appellants' parental rights is in G.S.'s best interest, and therefore, the evidence of best interest is legally sufficient. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(2), 263.307(b); *see also In re J.F.C.,* 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72; *In re J.M.T.*, 519 S.W.3d at 269-70. Although some evidence might weigh against the finding, such as the impending admission of both Appellants into inpatient drug treatment at the time of trial, this evidence is not so significant that a reasonable factfinder could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating Appellants' parental rights is in G.S.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72; *In re J.M.T.*, 519 S.W.3d at 269-70. We therefore conclude that the evidence supporting the trial court's finding that termination of Appellants' parental rights is in G.S.'s best interest is factually sufficient. *See In re J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72; *In re J.M.T.*, 519 S.W.3d at 269-70. Accordingly, we overrule issues one and two.

## BREACH OF THE MSA

In issue three, Appellants argue that the trial court lacked authority to "modify" the MSA by imposing a deadline for them to complete their services, and therefore, they "are not in breach of the MSA and any reliance on breach of the MSA to support termination ground 'O' is insupportable." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

**Pertinent Procedural Background**

In March 2021, the parties attended mediation and filed a MSA, which provided that "[t]he case will continue until each parent successfully completes his or her service plan, or materially

8

violates his or her service plan and has his or her parental rights terminated." Additionally, the MSA stated that each parent would be placed on a service plan, which would require as follows:

> If a parent's first drug test after this Agreement is signed is positive then that parent shall enroll in, attend, and successfully complete inpatient drug treatment at a facility designated by the Department, and follow all recommendations. If a parent's first drug test after this Agreement is signed is negative, then that parent shall enroll in, attend, and successfully complete outpatient drug treatment at a facility designated by the Department, and follow all recommendations.

The MSA also required each parent to attend "90 in 90" and to provide a release to the Department to enable the Department to monitor their substance abuse treatment. The general rules and requirements, which were attached to the MSA and incorporated into it by reference, required each parent to submit to drug testing as requested by the Department within one hour of such a request. The MSA required each parent to demonstrate, through drug testing and otherwise, "that he/she remains free from any and all illegal substances" during the case. In addition, the MSA provided that the Department would be appointed sole managing conservator of G.S. The MSA further stated that if any party believes a parent has materially breached his or her service plan, the movant may request a hearing to prove the material breach. Per the MSA, if the trial court finds that either parent had materially breached his or her service plan and the breaching parent did not voluntarily execute an affidavit of relinquishment of his or her rights, "the Department may present evidence to the Court of grounds for involuntary termination of that parent's rights, and the termination shall be based on the evidence presented."

The Department recommended that the MSA "be made an order of the court[,]" and in a permanency hearing order filed on July 15, 2021, the trial judge ordered that both S.F. and J.S. submit to inpatient drug treatment by July 24, 2021. In August 2021, the trial court signed an agreed temporary order, in which it adopted the MSA as an order of the court and included the same drug testing and drug treatment requirements as were set forth in the MSA. As both parties point out in their briefs, the MSA did not include a deadline for Appellants to complete their services and enter drug treatment; rather, the trial court set a deadline for completion of the services and tasks required by the MSA in a separate order.

In explaining his ruling on the record, the trial judge stated that when Appellants tested positive for drugs shortly after the MSA, "[i]t was a relapse situation, and that's why the Court took the strong position of ordering a specific time that these parents should get into inpatient

9

[treatment]." The trial judge also stated, "Folks, this case has gone on way too long, and many chances have been given to these parents. . . . "[W]e have to be able to move forward and get permanency. For that reason, I will find that the evidence . . . provided is clear and convincing to support that termination of . . . rights [is] in the best interest of the child, . . . and I will go ahead and terminate their rights . . . for failure to complete their service plan that was ordered by the Court."

## Standard of Review and Applicable Law

An appellate court reviews a trial court's decision to render judgment on a MSA under Section 153.0071 of the Texas Family Code for abuse of discretion. *In re C.C.E.*, 530 S.W.3d 314, 319 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see* TEX. FAM. CODE ANN. § 153.0071(d), (e) (West Supp. 2021) (setting forth the requirements for a binding MSA and providing that if a MSA meets the requirements, a party is entitled to judgment on the MSA). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). A trial court does not abuse its discretion "as long as some evidence of a substantive and probative character exists to support the trial court's exercise of its discretion." *In re H.D.C.*, 474 S.W.3d 758, 763 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Section 161.001(b)(1)(O) of the Texas Family Code provides that the trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that a parent has failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under Chapter 262 for abuse or neglect. TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Texas courts generally take a strict approach to application of Subsection (O). *In re J.M.T.*, 519 S.W.3d at 267. Subsection (O) does not "make a provision for excuses" for a parent's failure to comply. *See*, *e.g.*, *In re S.Y.*, 435 S.W.3d 923, 928 (Tex. App.—Dallas 2014, no pet.).

"In termination cases, judicial economy is not just a policy–it is a statutory mandate." *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003). To avoid negative psychological effects on a child due to being left in limbo, the Department has an interest in an accelerated timetable and a final decision that is not unduly prolonged. *In re D.W.*, 498 S.W.3d 100, 113 (Tex. App.—Houston

[1st Dist.] 2016, no pet.). "[C]hildren also have strong interest in a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged." *Id*. (citing *In re J.F.C.*, 96 S.W. S.W.3d 256, 304 (Tex. 2002) (Schneider, J., dissenting)). The policy factors favoring expeditious determinations in termination cases are apparent in the Legislature's enactment of Section 263.401(a) of the Family Code, which provides that unless the court has commenced a trial on the merits or granted an extension under Subsection (b) or (b-1), the court shall dismiss the proceeding on the first Monday after the first anniversary of the date the court appointed the Department as the child's temporary managing conservator. *Id*.; *see* TEX. FAM. CODE ANN. § 263.401(a) (West Supp. 2021).[1] The trial court may extend the dismissal deadline for up to 180 days, and it must dismiss the suit if trial has not commenced on or before the new dismissal date. TEX. FAM. CODE ANN. § 263.401(b), (c) (West Supp. 2021).

The strong policy considerations favoring prompt resolution are also reflected in Section 109.002(a-1) of the Texas Family Code, which provides as follows: "An appeal in a suit in which termination of the parent-child relationship is ordered shall be given precedence over other civil cases by the appellate courts, and shall be accelerated, and shall follow the procedures for an accelerated appeal under the Texas Rules of Appellate Procedure." *Id*. § 109.002(a-1) (West Supp. 2021). Likewise, in cases involving termination of parental rights, the rules of judicial administration require the Courts of Appeals to issue a decision within 180 days of the date the notice of appeal is filed. TEX. R. JUD. ADMIN. 6.2(a).

Because a MSA is a contract, courts apply general principles of contract interpretation in determining its meaning. *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). A party's time for performance is generally an essential term of a contract. *See City of Houston v. Williams*, 353 S.W.3d 128, 138 (Tex. 2011); *Houston Cmty. College Sys. v. HV BTW, LP*, 589 S.W.3d 204, 212 (Tex. App.—Houston [14th Dist.] 2019, no pet.). When a contract is silent regarding an essential term, the courts will supply a reasonable time. *See Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.,* 590 S.W.3d 471, 486 (Tex. 2019) (citing RESTATEMENT (SECOND) OF CONTRACTS § 204 (Am. Law Inst. 1981)) (noting that "when parties have not agreed to an essential term in a contract, courts will supply a reasonable term"); *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 827 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (holding that "the law will imply a

---

[1] Because the 2021 amendments to Section 263.401 do not materially affect the pertinent subsections of the statute or the outcome of this appeal, we cite to the current version of the statute.

11

reasonable time" for performance). Timely performance is a material term of a contract if something in the nature and purpose of the contract and the surrounding circumstances makes it apparent that the parties intended that time is of the essence. *TrueStar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App.—Dallas 2010, no pet.).

**Analysis**

Appellants argue that if the parties sign a MSA that does not include deadlines for a parent to complete the required services, the trial court may not "modify" the MSA by imposing deadlines in future orders, essentially giving parents unlimited time to complete the required services and tasks. For the reasons detailed below, we disagree.

The MSA did not contain a deadline for Appellants to complete the required services; however, in light of the undisputed evidence of Appellants' usage of illegal drugs, the trial court did not abuse its discretion by concluding that Appellants' completion of the required tasks and services was an essential, material term for the case to proceed expeditiously. *See Barrow-Shaver Resources Co.,* 590 S.W.3d at 486; *Williams*, 353 S.W.3d at 138; *Yazdani-Beioky*, 550 S.W.3d at 827. In construing and executing the MSA, the trial court was obligated to consider the nature and purpose of the MSA and the surrounding circumstances (*i.e.*, the MSA affects a suit seeking termination of parental rights, and G.S. had been in the care of the Department since 2018). *See TrueStar Petroleum Corp.*, 323 S.W.3d at 319. Given the above-detailed strong policy interests favoring expeditious determinations in termination cases, as well as the undisputed evidence that Appellants used illegal drugs and had not entered inpatient drug treatment or completed other required tasks and services, we conclude that the trial court reasonably construed the MSA to require performance by July 24, 2021, and the trial did not abuse its discretion by finding that Appellants breached the MSA by not having entered inpatient drug treatment or performing the other required services and tasks. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *Williams*, 353 S.W.3d at 138; *In re B.L.D.*, 113 S.W.3d at 353; *In re D.W.*, 498 S.W.3d at 113; *In re H.D.C.*, 474 S.W.3d at 763. Accordingly, the trial court did not abuse its discretion in rendering judgment on the MSA and adding a deadline for Appellants' performance under the MSA by a separate order. *See Barrow-Shaver Resources Co.,* 590 S.W.3d at 486; *Williams*, 353 S.W.3d at 138; *In re C.C.E.*, 530 S.W.3d at 319; *Yazdani-Beioky*, 550 S.W.3d at 827; *In re H.D.C.*, 474 S.W.3d at 753; *TrueStar Petroleum Corp.*, 323 S.W.3d at 319. For these reasons, we overrule issue three.

## DISPOSITION

Having overruled each of Appellants' three issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered March 23, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

## MARCH 23, 2022

## NO. 12-21-00227-CV

## IN THE INTEREST OF G.S., A CHILD

Appeal from the 321st District Court
of Smith County, Texas (Tr.Ct.No. 18-2465-D)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*