**Affirmed and Memorandum Opinion filed January 23, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00936-CV

---

## IN THE INTEREST OF J.C.K, A CHILD

---

**On Appeal from the 247th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-07374**

---

### MEMORANDUM  OPINION

Appellant Mose Christopher King (Father) appeals from a final order in a suit to modify a parent-child relationship. *See* Tex. Fam. Code § 109.002. In three issues Father asserts the trial court abused its discretion in (1) determining there was a material and substantial change in circumstances between the prior order and the filing of the petition to modify; (2) not following the wishes of the child who was over the age of 12; and (3) allowing a conservator who had physically abused the child to be appointed as the managing conservator with the exclusive right to establish the child's primary residence. We affirm.

BACKGROUND

Father and Denise Nicole Smith McGriff King (Mother) were divorced in 2009. At that time, J.C.K. (the Child) was two years old. The parents were named joint managing conservators and Father was designated as the conservator with the exclusive right to designate the primary residence of the Child.

In 2021, Mother filed a petition to modify the parent-child relationship in which she sought appointment as the conservator with the right to designate the primary residence of the Child without regard to geographic location. Mother further requested that Father's periods of possession be supervised. After a bench trial the trial court granted Mother's motion to modify and ordered, inter alia, that Mother be designated the conservator with the exclusive right to designate the primary residence of the Child within Harris County and contiguous counties and within Dallas County and contiguous counties.

The trial court held a bench trial at which both parents and Dr. Jean Guez testified. Dr. Guez was appointed by the court to attempt reunification between the Child and Mother. When Guez met with Father, he would not cooperate and told Guez that the Child was afraid of Mother. Father did not explain any dangerous actions that Mother had committed to lead Guez to believe that the Child's fear was based in fact. Mother accused Father of isolating the Child and making emotional demands on him. According to Guez both parents were complaining about the other parent not properly following the trial court's orders.

The Child reported to Guez that Mother had punched him. Guez testified that she did not spend enough time with the family to make a determination as to whether the Child was safe or not safe with Mother. In a report filed with the court Guez stated that the Child was under pressure to assert conflict with Mother and to say that he did not want to live with her. Guez asked that Father help the Child

understand that he could visit Mother in a safe manner, but Father refused. Due to Father's unwillingness to cooperate, Guez ended the reunification therapy after one session.

Mother testified that the parties' divorce decree gave Father primary custody. An order modifying the divorce decree was signed in 2013. That order continued primary custody with Father and allowed Mother periods of possession that depended on whether she was living in Houston or Dallas. When the Child visited Mother in Dallas the parents agreed to meet halfway to make the exchange. At the time of the final hearing, September 2022, Mother had not been able to exercise her visitation for almost two years, since October 2020. The last time the Child visited Mother in Dallas, she kept him longer than her regular period of possession. Mother testified that the Child did not want to go back to Father and that Father did not contact her about meeting halfway to pick up the Child. The Child stayed with Mother approximately one more week until Father picked him up. Mother admitted to not returning the Child to Father on time "three or four times." Mother testified that Father did not keep Mother informed about the Child's school activities.

Mother was concerned about the Child living with Father because Father was alienating the Child from his friends. Father removed the Child from school and placed him in a homeschool program. After the motion to modify was filed, at least two visits were arranged by the Child's ad litem. On one of the visits Mother was supposed to pick up the Child from school. While Mother and the ad litem were waiting at the school, Father picked up the Child and took him home. Mother and the ad litem drove to Father's house where the ad litem attempted to speak with Father. Father told the ad litem to leave his property. On a second occasion Mother was able to visit the Child outside a YMCA where Father was playing basketball. The ad litem went with Mother to the visit and sat outside at a distance while Mother

3

and son visited. Mother was seeking primary custody of the Child because she did not believe Father would allow her to visit the Child under a standard possession order.

Father testified that he did not impede Mother's ability to exercise visitation with the Child, but the Child chose not to visit Mother. With the aid of the court and the ad litem the parties engaged three different therapists in an attempt to help the Child maintain a relationship with Mother. The first therapist proved unworkable for unknown reasons. Father contended that the second therapist was not qualified, then the court appointed Guez with whom Father refused to engage. Father testified that after the second therapist was discharged, the Child saw that therapist for trauma therapy.

The trial court signed an order granting Mother's petition to modify the parent-child relationship. The trial court ordered that the parents remain joint managing conservators and, inter alia, granted Mother the exclusive right to designate the primary residence of the child. Father timely appealed.

ANALYSIS

In three issues Father asserts the trial court abused its discretion in (1) finding a material and substantial change in circumstances between the prior order and the petition to modify; (2) failing to follow the wishes of the Child when there was insufficient evidence of the Child's best interest to override the Child's choice; and (3) allowing a conservator who had physically abused the Child to be designated as the managing conservator with the exclusive right to establish the Child's primary residence.

I.    **Standard of review and applicable law**

We review conservatorship determinations for abuse of discretion. *See In re*

4

*J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Baltzer v. Medina*, 240 S.W.3d 469, 474–75 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Generally, a trial court abuses its discretion by acting arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2008, pet dism'd w.o.j.). We cannot interfere with the trial court's ruling so long as there is some evidence of a substantive and probative character to support its decision. *See Cox v. Cox*, No. 14-22-00853-CV, 2023 WL 6561106, at *4 (Tex. App.—Houston [14th Dist.] Oct. 10, 2023, no pet.) (mem. op.).

Under this abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error, but instead are relevant factors to determine if the trial court abused its discretion. *See Baltzer*, 240 S.W.3d at 475; *see also Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). When examining legal sufficiency, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). We indulge every reasonable inference that would support the challenged finding. *Id*. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id*.

For a factual-sufficiency review, we examine the entire record and consider evidence favorable and contrary to the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*.

"As conservatorship determinations are 'intensely fact driven,' the trial court is in the best position to 'observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely

reading the record.'" *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (quoting *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002)). As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination and will not substitute its judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992).

**II.     The trial court did not abuse its discretion in finding a material and substantial change in circumstances.**

In Father's first issue he asserts the trial court abused its discretion in determining there was a change in circumstances between the prior order and the petition to modify.

A trial court may modify a child support order if, inter alia, "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the previous order. Tex. Fam. Code § 156.101(a)(1). The change-in-circumstances requirement is a threshold issue for the trial court and is based on a policy of preventing constant re-litigation with respect to a child. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In deciding whether a material and substantial change of circumstances has occurred, a fact finder is not confined to rigid or definite guidelines; instead, the determination is fact specific and must be made according to the circumstances as they arise. *See Arredondo v. Betancourt*, 383 S.W.3d 730, 734–35 (Tex. App.—Houston [14th Dist.] 2012, no pet.). To demonstrate that a material and substantial change of circumstances has occurred, the evidence must show the conditions that existed at the time of the entry of the prior order as compared to the circumstances existing at the time of the trial on the petition to modify. *In re A.L.E.*, 279 S.W.3d at 429. Once these circumstances have been shown, the movant must show what material and substantial changes have occurred in the intervening period. *In re*

6

*K.A.M.S.*, 583 S.W.3d 335, 342 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

In this case, the prior order was an order signed by the trial court on August 2, 2013. Among other things, the 2013 order required both parents to comply with the conditions of modified possession. The order required Mother to have weekend possession on the first, third, and fifth Fridays of the month if she lived in Harris County. The order further provided for holiday and summer possession periods. If Mother lived outside Harris County, the order also required possession on the first, third, and fifth weekends of the month and required the parents to exchange the Child at a restaurant in Centerville, Texas.

The evidence at trial reflected that these possession orders were generally followed until October 2020. At that time Father refused to allow Mother possession of the Child. As recited above, the record reflects that despite Mother's attempts to exercise her visitation rights Father interfered with those rights, even picking up the Child from school on a day when Mother and the Child's court-appointed ad litem were waiting at the school to pick up the Child.

Under the applicable standards of review, we conclude there was legally and factually sufficient evidence that there had been a material and substantial change in circumstances since the 2013 possession order. The trial court, therefore, did not abuse its discretion in determining there had been a material and substantial change in circumstances. We overrule Father's first issue.

### III. The trial court did not abuse its discretion in designating Mother as the primary custodial parent.

In Father's second issue he asserts the trial court abused its discretion by not following the wishes of the Child to remain with Father. In Father's third issue he asserts the trial court abused its discretion in appointing a conservator who had physically abused the Child. As both issues center around the best interest of the

7

Child, we address these issues together.

## A. The Child's interview

In a nonjury matter, such as this one, and on the request of certain interested parties, the Family Code requires a trial court to conduct an in-chambers interview of a child twelve years of age or older to determine the child's wishes as to conservatorship or as to the determination of the person having the exclusive right to determine the child's permanent residence. Tex. Fam. Code § 153.009(a). In this case, the trial court conducted an in-chambers interview, the interview was recorded, and a transcription was admitted into evidence at trial.

During the interview, the Child told the court that he did not trust the ad litem. The Child accused Mother of threatening Father in the Child's presence and making him feel unsafe. The Child accused Mother of not properly feeding him. The Child reported that in October 2020, the last time he visited Mother, she would not let him leave and hit him because he wanted to leave. At the time of the interview the Child was attending high school and played on the basketball team. He reported that he spent a lot of time by himself. The Child told the court that he preferred to not have visitation with Mother.

Interviewing a child is designed to aid the court in making conservatorship and possession determinations, but it "does not diminish the discretion of the court in determining the best interests of the child." Tex. Fam. Code § 153.009(c); *In re Marriage of Comstock*, 639 S.W.3d 118, 135–36 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *In re A.C.*, 387 S.W.3d 673, 677 (Tex. App.—Texarkana 2012, pet. denied) (noting that "the information obtained by the trial court in such an interview is strictly supplemental to the evidence taken in court, the purpose of the interview being to aid the court in making its determination"); *In re K.R.P.*, 80 S.W.3d 669, 677 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("Although such interview

8

statements may be informative to a trial court in making its custody decision, they in no way diminish the discretion of the trial court.").

Information gleaned in such an interview may be placed in the storehouse of other information the trial court can use in exercising its discretion in matters of this type pertaining to children. *See Syed v. Masihuddin*, 521 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The trial court has broad discretion in making conservatorship and possession determinations, and the court "may choose to either take into account the information learned at such an interview or ignore it in its entirety." *In re A.C.*, 387 S.W.3d at 678.

When determining the child's best interest, Texas courts are to look to the following non-exhaustive list of factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re H.D.C.*, 474 S.W.3d 758, 766–67 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

We reject Father's reliance on authority that, "[a] child's designation should be given effect unless the record as a whole establishes that the child's designation would otherwise not be in the child's best interest." Not only are we not bound by Father's authority as it originated from another court of appeals, the authority on which Father relies has been superseded by statute. For this proposition, Father cites *In re Galliher*, 546 S.W.2d 665, 667 (Tex. Civ. App.—Beaumont 1977, no writ),

which in turn relied on former Family Code section 14.07(a): "If the child is 14 years of age or older, he may, by writing filed with the court, choose the managing conservator, subject to the approval of the court." Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 14.07, 1973 Tex. Gen. Laws 1411, 1425, *amended by* Act of May 14, 1991, 72d Leg., R.S., ch. 161, § 3, 1991 Tex. Gen. Laws 771, 771 (changing age from 14 to 12), *repealed by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, §§ 2, 4, 1995 Tex. Gen. Laws 113, 282, eff. April 20, 1995). The Legislature enacted section 153.008 of the Family Code in 1995, which as amended in 1999 read, "If the child is 12 years of age or older, the child may, by writing filed with the court, choose the managing conservator, subject to the approval of the court." Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 153.008, 1995 Tex. Gen. Laws 113, 148), *amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 161, § 12, 1999 Tex. Gen. Laws 4696, 4699 (changing age from 12 to 10), *amended by* Act of May 22, 2001, 77th Leg., R.S., ch. 1289, § 1, 2001 Tex. Gen. Laws 3108, 3108 (changing age from 10 to 12), *amended by* Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 5, 2003 Tex. Gen. Laws 2987, 2988 ("A child 12 years of age or older may file with the court in writing the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child, subject to the approval of the court."), *repealed by* Act of May 29, 2009, 81st Leg. R.S., ch. 1113, § 31, 2009 Tex. Gen. Laws 3056, 3072 *and* Act of May 29, 2009, 81st Leg. R.S., ch. 1118, § 10, 2009 Tex. Gen. Laws 3078, 3082. The current statute, Family Code section 153.009, allows, but does not require, a court to interview in chambers children under 12 years of age to determine the child's living preference. Tex. Fam. Code § 153.009(a). Moreover, the court in *Galliher* recognized that the child's preference does not override the trial court's discretion in determining primary custody. 546 S.W.2d at 667 ("In no event is [the child's] designation absolute or controlling.").

As to the Child's desire to live with Father, Guez described the Child as "under a tremendous amount of pressure to repeat himself and say how bad it was, that he would have to spend time with — with his mother and how she says bad things about his dad." Guez expressed concern about both parents permitting the Child to "be in charge" of whether he saw his parents. She testified that "no child should be in charge — of whether or not they see a parent in a safe way." Guez expressed the opinion that if Father would assure the Child that he could safely visit Mother, the Child would have agreed. Guez testified that Father, however, was not in favor of reunifying the family at all.

In applying the remaining *Holley* factors, the record reflects that the parents have been unable to co-parent amicably for the last three years. While Father blames Mother for the conflict and her unwillingness to deliver the Child after her periods of possession, there is ample evidence that Father interfered with Mother's visitation rights. There was also evidence that both parents ceded to their Child their responsibility to ensure the Child had a relationship with the other parent.

We cannot say that the trial court abused its discretion in determining that the Child's best interest was to have a relationship with both parents.

## B. Alleged abuse

Father focused at trial and on appeal on the Child's accusation that Mother had punched or shoved the Child. Mother denied punching or shoving the Child. When the Child reported the allegation to Guez, Guez did not discount the Child's statement, but testified what the Child described did not rise to the level of physical abuse. Guez testified that she was a mandatory reporter and if the allegation had been credible, she would have reported it. Mother focused on emotional abuse of the Child, testifying that Father left the Child alone during the day, isolated him from friends, and made derogatory remarks about Mother. At the conclusion of trial, the

11

Child's ad litem expressed concern that if Father continued to be the primary custodial parent, the Child would never see his mother.

The evidence is conflicting on whether Mother punched or shoved the Child. "In a bench trial, the trial court is in the best position to observe and assess the witnesses' demeanor and credibility, and 'to sense the forces, powers, and influences that may not be apparent from merely reading the record on appeal.'" *In re K.A.M.S.*, 583 S.W.3d at 341. While no court can disregard an allegation of physical abuse of a child, the trial court, in its factfinding capacity, could have credited Mother's testimony that she did not harm her child. In addition, the trial court could have taken into account Guez's observations that what the Child described did not rise to physical abuse, and that Father was pressuring the Child to make allegations against Mother.

On this record and under the highly deferential standard of review applied in modification cases, we cannot conclude that the trial court abused its discretion in granting Mother's request for modification and designating her as the parent with the exclusive right to designate the Child's primary residence. We overrule Father's second and third issues.

### CONCLUSION

Having overruled Father's three issues on appeal, we affirm the trial court's final order.

/s/ Jerry Zimmerer
   Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.