

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00114-CV

———————————————

IN THE INTEREST OF Z.D., A CHILD

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-741045-23

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Father[1] appeals the trial court's order awarding Maternal Grandmother managing conservatorship of his son, Aaron, and awarding Father supervised possessory conservatorship. Father presents four issues: (1) whether the trial court—when equalizing strikes—erred in limiting him to only three peremptory strikes; (2) whether the trial court erred in denying his motion for judgment notwithstanding the verdict, which contested the jury's awarding Maternal Grandmother managing conservatorship of Aaron; (3) whether—after the jury verdict and after Father and Maternal Grandmother had reached an agreement regarding his possession—the trial court erred by requiring Father to waive his right to appeal as a condition to accepting the agreement; and (4) whether the trial court abused its discretion in ordering his periods of possession to be supervised. We hold that Father did not preserve his first issue; the trial court did not err by denying his motion for judgment notwithstanding the verdict; assuming that the trial court erred by conditioning its acceptance of Father and Maternal Grandmother's possession agreement on his waiving his right to appeal, he has not shown harm; and the trial court did not abuse its discretion by ordering supervised possession. We overrule Father's four issues and affirm the trial court's judgment.

---

[1] We use an alias to identify the child and identify family members by their relationship to the child. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

## I. Background

On October 4, 2023, the Texas Department of Family and Protective Services filed an original petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent–child relationship. Three children were the subject of the suit. The youngest of the three was Aaron, who was only a few months old. The two older children had a different father and are not the subject of this appeal.[2]

As to Aaron, the affidavits in support of the children's removal asserted that when Mother gave birth to him in August 2023, both he and Father tested positive for methamphetamine. In September 2023, after Father's hair follicle test came back positive for amphetamines and methamphetamine, he declined to cooperate with the Department. And in October 2023, after the other children's father caught Mother trying to leave the State with all three children and after the ensuing confrontation resulted in the police responding to a domestic disturbance, the Department removed the children due to concerns of drug use, domestic violence, and the lack of any protective caregivers.

On the same date that the Department filed its petition, in an ex parte emergency order, the trial court appointed the Department as the children's

---

[2]They are, however, the subject of a separate appeal, *In re E.L.*, No. 02-25-00165-CV (Tex. App.—Fort Worth filed Apr. 9, 2025). After the jury trial, the trial court severed Aaron's case from his siblings' case.

temporary sole managing conservator. Thereafter, on October 17, 2023, Maternal Grandmother filed a petition in intervention in which she sought managing conservatorship of all three children. And on November 29, 2023, the Department filed a motion to modify possessory conservatorship seeking to have all three children placed with Maternal Grandparents.

A few days later, on December 5, 2023, the trial court conducted the full adversarial hearing and a hearing on the Department's motion to modify possessory conservatorship.[3] In the order disposing of the full adversarial hearing, the court found that the "appointment of the parent or parents as managing conservator of the children is not in the best interest of the children because the appointment would significantly impair the children's physical health or emotional development" and appointed the Department as the children's temporary managing conservator. And in the order disposing of the Department's motion to modify possession, the trial court appointed Maternal Grandparents as the children's temporary possessory conservators and placed all three children with them.

---

[3]The trial court did not sign the order reflecting the results of the hearing on the motion to modify until January 12, 2024, and did not sign an order showing the results of the full adversarial hearing until January 17, 2024.

4

At trial in January 2025,[4] during opening statements, the Department told the jury that it was not seeking termination but was seeking the appointment of Maternal Grandmother as the children's managing conservator. During trial, the jury heard evidence that Father tested positive for methamphetamine on some occasions and negative on others. The jury also heard testimony that he had been unsuccessfully discharged from drug treatment programs three times. After hearing testimony for two days, the jury found that it was in all three children's best interest to appoint Maternal Grandmother as their managing conservator.

After the verdict, Maternal Grandmother and Father reached an agreement regarding his possessory conservatorship of Aaron. The trial court, however, refused to accept the agreement unless Father waived his right to appeal. Father declined to waive his right to appeal, so the trial court determined his possessory conservatorship rights independently: "[A]s far as [Father], the Court will grant the expanded standard with supervised visitation as it was with his mother. We'll also require [Father] to provide semiannual hair follicle tests to [Maternal Grandmother]."

## II. Father's Issues

We address Father's second issue—his legal sufficiency challenge—first because, if sustained, it would provide him the most relief. "Generally, when a party presents multiple grounds for reversal of a judgment on appeal, the appellate court

---

[4]The trial court signed an order on September 9, 2024, retaining the suit on the court's docket, extending the dismissal deadline to February 11, 2025, and setting the case for jury trial on January 14, 2025.

5

should first address those points that would afford the party the greatest relief." *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999). Thereafter, we address Father's first, third, and fourth issues.

### A. Denial of Motion for Judgment Notwithstanding the Verdict

#### 1. Preservation

We first address the scope of Father's sufficiency complaint. In his brief, he contests both the legal and factual sufficiency of the evidence supporting the jury's verdict selecting Maternal Grandmother as Aaron's managing conservator. At trial, Father moved for a judgment notwithstanding the verdict that the trial court denied, but he did not file a motion for new trial attacking the factual sufficiency of the evidence.

In a jury trial, a party preserves a no-evidence complaint through one of the following means: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *In re J.S.*, No. 02-18-00164-CV, 2018 WL 5833438, at *2 (Tex. App.—Fort Worth Nov. 8, 2018, pet. denied) (per curiam) (mem. op.). Father thus preserved his legal sufficiency challenge by moving for a judgment notwithstanding the verdict.

Father, however, failed to preserve his factual-sufficiency complaint for appeal. To preserve a factual-sufficiency complaint after a jury trial, Father had to file a motion for new trial. *See* Tex. R. Civ. P. 324(b)(2); *In re A.S.*, No. 02-23-00160-CV,

2023 WL 4779826, at *5 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.); *see also In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) (discussing failure to file motion for new trial in context of ineffective assistance of counsel). Our record does not show that Father filed a motion for new trial.

Father's motion for judgment notwithstanding the verdict did not preserve his factual-sufficiency complaint. A motion for judgment notwithstanding the verdict preserves a legal sufficiency complaint but not a factual insufficiency one. *Obernuefemann v. Stout Homebuilders, LLC*, No. 09-23-00136-CV, 2025 WL 1710533, at *8 (Tex. App.—Beaumont June 19, 2025, no pet. h.) (mem. op.); *Baron Aviation Servs., Inc. v. Kitchen*, 679 S.W.3d 330, 339 (Tex. App.—Eastland 2023, pet. denied); *Stover v. ADM Milling Co.*, No. 05-17-00778-CV, 2018 WL 6818561, at *18 & n.12 (Tex. App.—Dallas Dec. 28, 2018, pet. denied) (mem. op.); *Kratz v. Exxon Corp.*, 890 S.W.2d 899, 902 (Tex. App.—El Paso 1994, no writ).

Accordingly, we limit our review to Father's legal-sufficiency challenge.

## 2. Legal Principles and Standard of Review

The Texas Family Code provides that a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of a child "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 153.131(a). "[A] finding that appointment of a parent as managing

7

conservator would significantly impair the child's physical health or emotional development is governed by a preponderance-of-the-evidence standard." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *see* Tex. Fam. Code Ann. § 105.005.

A trial court's conservatorship determinations are subject to review only for an abuse of discretion and may be reversed only if the decision is arbitrary and unreasonable. *J.A.J.*, 243 S.W.3d at 616. But "[i]n a jury trial, a trial court may not render an order in contravention of the jury's findings." *Id.* at 616 n.5 (citing Tex. Fam. Code Ann. § 105.002(c)(1)(A)). "Jury findings underlying a conservatorship appointment are subject to ordinary legal and factual sufficiency review." *Id.*

When reviewing a jury verdict for legal sufficiency, we look to see if more than a scintilla of evidence supports the jury's finding, considering evidence favorable to the jury's finding unless a reasonable jury could not and disregarding evidence contrary to the finding unless a reasonable factfinder could not. *Emerson Elec. Co. v. Johnson*, 601 S.W.3d 813, 833 (Tex. App.—Fort Worth 2018) (mem. op.), *aff'd*, 627 S.W.3d 197 (Tex. 2021). Anything more than a scintilla of probative evidence is legally sufficient to support a finding. *See In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g), *superseded by statute on other grounds as stated in In re S.N.Z.*, 421 S.W.3d 899, 909 n.4 (Tex. App.—Dallas 2014, pet. denied). As the factfinder, the jury is the sole judge of the weight and credibility of the evidence and is entitled to believe all, some, or none of a witness's testimony. *See*

*In re E.E.*, No. 07-23-00205-CV, 2023 WL 5663093, at *1 (Tex. App.—Amarillo Aug. 31, 2023, pet. denied) (mem. op.).

### 3. Discussion

Early in the case, Father tested positive for methamphetamine.[5] Hair follicle tests collected on August 31, 2023, and December 15, 2023, came back positive for amphetamines and methamphetamine. As late as September 2024—roughly three months before trial—Father's hair-strand test came back positive for methamphetamine. And in July, August, September, and October 2024, Father did not complete requested urinalyses, so the Department presumed that he would have tested positive on all four occasions. Evidence showing illegal drug use supports an inference that a parent is at risk for continuing drug use. *In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Drug use can endanger a child. *See In re A.V.*, 697 S.W.3d 657, 658–59 (Tex. 2024). "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial risk of harm." *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024); *see In re E.A.*, No. 02-24-00535-CV, 2025 WL 1085189, at *9 (Tex. App.—Fort Worth Apr. 10, 2025, pet. denied) (mem. op.); *In re J.A.R.*, 696 S.W.3d 245, 254 (Tex.

---

[5]Father had an early urinalysis that came back negative, but the Department later discovered that he had been given the wrong test; he had been given a test to check for alcohol, not methamphetamine. Over the course of the case, Father tested both positive and negative for methamphetamine.

App.—Houston [14th Dist.] 2024, pets. denied); *In re A.J.Z.*, No. 04-20-00218-CV, 2020 WL 5913845, at *4 (Tex. App.—San Antonio Oct. 7, 2020, no pet.) (mem. op.) ("[The parent's] drug use, even if not the immediate cause of the children's removal and even if done outside of their presence, presented an emotional and physical danger to the children, negatively affected the stability of [the parent's] home, weighed on the children's emotional and physical needs, and indicated an improper parent-child relationship."). And methamphetamine specifically poses an immediate danger to a child's physical health and safety. *In re A.A.*, 670 S.W.3d 520, 530 (Tex. 2023).

A permanency specialist testified that Father had been unsuccessfully discharged from drug treatment programs three times. She said that Father had last been unsuccessfully discharged in December 2024 and that the drug treatment program had recommended that he complete an inpatient program due to his multiple discharges. From Father's inability to successfully complete drug treatment programs, a reasonable factfinder could have determined that he would continue to endanger Aaron. *See Cervantes-Peterson v. Tex. Dep't of Fam. & Protective Servs.*, 221 S.W.3d 244, 255 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc) ("Given [the mother's] long standing history of narcotics use . . . and her failure to stay off narcotics despite her enrollment in two prior drug rehabilitation programs, a reasonable trier of fact could have determined that [she] would continue to endanger [her child].").

The permanency specialist explained why Father's drug use posed a risk to Aaron. She explained that at the time of trial, Aaron was only seventeen months old,

10

could not provide for himself, could not feed himself, and was still in diapers. She explained that when the primary caregiver is under the influence of a mind-altering substance, especially methamphetamine, the child could be in grave danger. Continuing to use drugs indicates an inability or unwillingness to prioritize the burdens and responsibilities of parenthood and is not compatible with the care of a very young child like Aaron. *See In re A.J.D.-J.*, 667 S.W.3d 813, 819, 825 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (involving a one-year-old child); *In re B.D.A.*, 546 S.W.3d 346, 361 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (op. on reh'g) ("Regarding the children's ages and . . . vulnerabilities, they were seven, five, and four at the time of trial. Thus, the children's young ages render them vulnerable if left in the custody of a parent unable or unwilling to protect them or to attend to their needs.").

The permanency specialist asserted that the Department was concerned about active use and addiction. Father testified that he last used methamphetamine in June 2024 and that he intended to continue with a drug treatment program although he acknowledged that he was not currently enrolled in any program. The jurors, however, did not have to believe Father, and based on the verdict, they did not. *See E.E.*, 2023 WL 5663093, at *1.

Here, sufficient evidence supports a finding by a preponderance of the evidence that appointing Father as managing conservator was not in Aaron's best interest and would significantly impair his physical health or emotional development.

11

*See J.A.J.*, 243 S.W.3d at 616. Aaron's case had been pending about fifteen months, and during that time, Father had not successfully completed a drug treatment program. He took a hair-strand test that came back positive for methamphetamine in September—about three months before trial—and failed to take requested urinalyses in July, August, September, and October 2024, so the Department treated them as presumptively positive. *See In re K.M.E.*, No. 07-24-00202-CV, 2024 WL 4831898, at *1 (Tex. App.—Amarillo Nov. 19, 2024, pet. denied) (mem. op.). Thus, while the case was pending and despite knowing that his use of methamphetamine was an impediment to his having unsupervised possession of Aaron, Father continued to use methamphetamine. Aaron was an infant and not able to protect himself or seek help, so he was vulnerable. And Father lived alone, meaning that Aaron would have been completely dependent on Father to keep him safe in an environment that Father himself—due to his drug use—made dangerous.

We overrule Father's second issue.[6]

---

[6]Had Father preserved his factual insufficiency challenge, we would have ruled against that contention too because the verdict was not so contrary to the evidence as to be clearly wrong and unjust. *See Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied) (articulating factual sufficiency standard of review). Despite the evidence favorable to Father, which the Department concedes was plentiful, a reasonable juror could have balked at the idea of returning a young child to someone who had used methamphetamine before the removal and after the removal and who, despite the case's pending about fifteen months, had not successfully completed a drug treatment program. *See In re L.M.*, 104 S.W.3d 642, 648 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding evidence factually sufficient in a termination case when the mother used drugs while pregnant and after the child's birth and the mother had not yet completed a residential program at the time of trial).

**B. Equalization of Challenges**

In Father's first issue, he asserts that the trial court—when equalizing strikes—erred in limiting him to only three peremptory strikes.

**1. Background**

The trial court raised the issue of the equalization of challenges before the parties conducted voir dire and stated that it was limiting Father to three peremptory challenges.[7] *See* Tex. R. Civ. P. 233. Father objected that he was not aligned with any other party and was thus entitled to six peremptory strikes. *See id.*

At the conclusion of voir dire, the parties made their peremptory strikes without voicing any objections. After twelve jurors were selected, the trial court asked all the parties if they had any objections to the panel, and all the parties stated that they did not. The trial court proceeded to swear in the jury—again without any objections.

**2. Preservation**

Any error in a trial court's allocation of jury strikes among the parties must be preserved by a timely objection. *In re M.N.G.*, 147 S.W.3d 521, 531 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g). Generally, the proper time to object to the trial court's allocation of strikes would be at the same time that the trial court should

---

[7]The trial court ordered the Department, Maternal Grandmother, and the children's attorney ad litem to share fives strikes and allotted three strikes each to Father, Mother, and the other father.

make its determination of antagonism—after voir dire and before the exercise of the strikes as so allocated by the court.[8] *Id.* at 532. A premature objection does not preserve error. *Allen v. Inman*, No. 02-19-00230-CV, 2020 WL 7396088, at *4 (Tex. App.—Fort Worth Dec. 17, 2020, pet. denied) (mem. op.); *Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310, 316 (Tex. App.—Texarkana 2003, no pet.).

### 3. Discussion

Here, Father objected before voir dire but did not object after voir dire when exercising his strikes. His objection was premature; he has not preserved his complaint. *See Tex. Com. Bank Reagan v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 78 (Tex. App.—Corpus Christi–Edinburg 1993, writ denied), *overruled on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex. 1998). Furthermore, after the jurors were selected, the trial court specifically asked the parties if they had any objections to the panel, and Father responded that he did not. *See id.*

We overrule Father's first issue.

### C. Rejection of Possessory Agreement

In Father's third issue, he asserts that the trial court erred by requiring him to waive his right to appeal as a condition to accepting his and Maternal Grandmother's

---

[8]For an example of an exception to this rule, *see id.* at 532–33 (relying on the ad litem's representation that he would not exercise any strikes, the appellant did not object when the trial court made its allocations but objected instead after the party learned that the ad litem had exercised his strikes and had coordinated his strikes with another party.)

agreement regarding possession. Father refused to waive his right of appeal, so the trial court refused to accept the agreement.

In his brief, however, Father fails to show how the agreement differed from what the trial court ordered and how any variation harmed him. We cannot make a party's arguments for him and then adjudicate the case based on the arguments we have made on the party's behalf.[9] *Lee v. Hood Cnty. Appraisal Dist.*, No. 02-23-00176-CV, 2024 WL 1100783, at *8 (Tex. App.—Fort Worth Mar. 14, 2024, pet. denied) (mem. op.). We cannot reverse a judgment unless a party has shown that an error "probably caused the rendition of an improper judgment." *See* Tex. R. App. P. 44.1(a)(1). Father has not made that showing.[10] *See In re M.P.B.*, 257 S.W.3d 804, 810–11 (Tex. App.—Dallas 2008, no pet.) (holding that the father failed to preserve his complaint that the trial court improperly conditioned granting his motion for continuance on his waiving his right to a jury trial), *disapproved of on other grounds by In re C.J.C.*, 603 S.W.3d 804, 819 & n.79 (Tex. 2020) (orig. proceeding).

We overrule Father's third issue.

---

[9]One of the things that Father wanted was the ability to have unsupervised visits if he met certain criteria without having to come back to court. Father does not point us to where in the record his agreement with Maternal Grandmother contained such a provision. In any event, the trial court's order does not contain one.

[10]In so holding, we should not be seen to approve the trial court's action in conditioning its acceptance of the agreement upon Father's waiver of his right to appeal. The Texas Family Code specifically addresses agreed parenting plans and how the trial court should handle them. *See* Tex. Fam. Code Ann. § 153.007. Demanding that a parent surrender any right to appeal as a condition of receiving judicial approval of the agreement is not identified as one of the trial court's options.

### D. Supervised Possession

In Father's fourth issue, he contends that the trial court abused its discretion in ordering his periods of possession to be supervised. The trial court's order provided for expanded standard possession but required that all possession be supervised by Father's mother or another competent adult whom she designated: "Any and all possession and access of the child by [Father] shall be continuously supervised by [P]aternal [G]randmother . . . or her designated competent adult representative."

#### 1. Legal Principles and Standard of Review

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002. "The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." *Id.* § 153.193.

When a trial court appoints a parent possessory conservator, it can conclude that unrestricted possession would endanger the child's physical or emotional welfare but that restricted possession or access would not. *In re Marriage of Patel & Parrish*, 643 S.W.3d 216, 223 (Tex. App.—Texarkana 2022, no pet.). A trial court has broad discretion when fashioning restrictions on a parent's possession and access that are in the best interest of the child. *In re H.D.C.*, 474 S.W.3d 758, 764 (Tex. App.—Houston [14th Dist.] 2014, no pet.). But if the trial court imposes restrictions that

16

exceed those required to protect the best interests of the child, it abuses its discretion. *Id.* (citing Tex. Fam. Code Ann. § 153.193). A trial court does not abuse its discretion if the record contains evidence supporting a finding that a restriction is in the child's best interests. *Id.*

### 2. Discussion

The Department's concern with Father was his drug use. It was a concern when the case started, and it remained a concern at the time of trial. Although Father had attended drug treatment programs, he had not successfully completed one. And his last drug treatment program recommended in December 2024—one month before trial—that he receive inpatient drug treatment. Drug use can endanger a child, especially one as young and helpless as Aaron. *See A.V.*, 697 S.W.3d at 658–59. The trial court thus had a factual basis for requiring supervised visitation. And given the danger that a parent's drug usage might pose to a child, we cannot say that the supervised-visitation restriction exceeded what was required to protect Aaron's best interest. *See* Tex. Fam. Code Ann. § 153.193.

We overrule Father's fourth issue.

## III. Conclusion

Having overruled all four of Father's issues, we affirm the trial court's judgment.[11]

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: July 31, 2025

---

[11]Per *In re D.D.*, No. 02-25-00335-CV (Tex. App.—Fort Worth, July 31, 2025, orig. proceeding), Lyndsay A. Newell remains Father's appointed counsel through proceedings in the Texas Supreme Court unless otherwise relieved. *See In re P.M.*, 520 S.W.3d 24, 27–28 (Tex. 2016); *see also* Tex. Fam. Code Ann. § 107.016(2)(C).